UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X
                               :

The McGraw-Hill Companies Inc., *et al.*,      :

                Plaintiffs,     :          12-CV-7085 (AJN)

                           :

       -v-                   :        OPINION AND ORDER

                           :

Charles Jones, *et al.*,            :

                Defendants.    :

                           :

------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: MAR 1 2 2014

ALISON J. NATHAN, District Judge:

      Plaintiffs in this case have filed suit alleging that Defendants were involved in a scheme
(the "Chop Shop") to unlawfully purchase copies of Plaintiffs' textbooks sold abroad and re-sell
them in the United States. (TAC ¶¶ 1, 3). The Third Amended Complaint asserts claims against
all Defendants for direct copyright infringement; contributory copyright infringement; removal,
alteration, and falsification of copyright management information; and trademark counterfeiting.
It further asserts claims for fraud against Defendants Michael Elmudesi, Letiva Capital Corp.
("Letiva"), and David Griffin, described in the Complaint as the "Dominican Defendants," and
for contributory copyright infringement against Griffin. Elmudesi, Letiva, and Griffin have filed
a total of five motions to dismiss. Three of those motions assert lack of personal jurisdiction or,
in the alternative, that the Court should transfer this case due to improper venue or in the
interests of convenience under 28 U.S.C. § 1404(a). Elmudesi and Letiva also move to dismiss
each claim, to the extent it is asserted against them, for failure to state a claim under Rule
12(b)(6). The Court determines that transfer is warranted and therefore need not reach
Defendants' motions on personal jurisdiction or the merits.

## I. FACTUAL BACKGROUND

### A. Allegations in the Third Amended Complaint

The Third Amended Complaint alleges that Plaintiffs are a group of educational publishers who, among other things, publish International Editions of their textbooks for sale in geographic markets outside the United States. (TAC ¶ 29). Sold at discounted prices to allow students in developing countries to afford these materials, the International Editions are conspicuously marked with a notice that the textbook is authorized for sale only in a particular country or prohibited for sale in specified regions—typical excluding North America. (TAC ¶¶ 29-30). Plaintiffs also sell U.S. Editions of these books internationally at a discount for a similar reason ("Overseas U.S. Editions"), and also may label these products as "not-for-sale in the United States." (TAC ¶ 30).

In roughly June 2008, Griffin and his partner Charles Jones purchased SE Book Company ("SEB") and, in early 2009, also purchased College Book Rental Company, LLC ("CBR"). (TAC ¶¶ 2, 35). At some point not specified by the Third Amended Complaint, they also created a third company, Blackrock Investments, LLC ("Blackrock"), as the primary owner of SEB. (TAC ¶ 35, 51). They used these companies to execute a scheme to purchase Plaintiffs' International Editions and Overseas U.S. Editions at a discount, alter those books, and resell them in the United States. (TAC ¶¶ 35-36).

At the beginning of this scheme, Griffin and Jones caused SEB to acquire such books and altered them in a number of ways to remove indications they were not for sale in the United States, including the following: using black electrical tape or "Used Book" stickers to cover up labels and markings, using hot irons or baby powder to remove stickers, and filing off logo stamps. (TAC ¶¶ 36-37). However, in early 2011, following a tour of a printing facility, Griffin

and Jones decided that they would acquire printing and binding equipment to create fake covers and pages of U.S. Edition books that they would then rebind onto the books they acquired internationally, allowing them to sell or rent these books as apparently legitimate U.S. Editions. (TAC ¶ 5, 38). To facilitate this plan, Jones purchased Excess LLC d/b/a Innovative Printing ("Innovative Printing") to disassemble the books purchased by SEB or CBR and, with the cooperation of certain outside vendors, reproduce U.S. Edition covers and rebind these books with the inaccurate cover. (TAC ¶¶ 39). In addition to the counterfeit covers, many of the textbooks had their copyright pages removed, as these pages—if left in the books—would have provided ISBN numbers or other information for the books that would have suggested the books had been altered or were not for sale in the United States. (TAC ¶¶ 4, 31-32, 47-48).

Among the suppliers for the International Editions and Overseas U.S. Editions were Elmudesi and Letiva, who are alleged to have been drawn into the Chop Shop scheme by Griffin. (TAC ¶ 53). Specifically, Griffin contacted Elmudesi, a prior business associate with ties to the Dominican Republic, to discuss setting up such a company to purchase books directly from the publishers on the pretense that they would be distributed in that country. (TAC ¶ 53). This plan was refined and finalized on a trip Griffin took with Jones, among others, to the Dominican Republic, leading to the creation of Letiva and other companies. (TAC ¶ 54). Letiva was then used to purchase textbooks under the pretense of purchasing them for international distribution, but instead selling them to SEB and others. (TAC ¶ 54). Griffin is alleged to have actively overseen the business plan for Letiva, including at meetings in the United States. (TAC ¶¶ 55).

Plaintiffs identify two specific transactions in which the "Dominican Defendants" are claimed to have participated. First, in March 2009, the Dominican Defendants represented to one of the Plaintiffs, Pearson Education Inc. ("Pearson"), that it desired to purchase books for

sale in the Dominican Republic, and on April 29, 2009, Letiva's general manager Luis Guilamo falsely certified to Pearson that the destination of the books was the Dominican Republic. (TAC ¶ 56a). Plaintiffs alleges that, in reliance on these false statements, Pearson sold a number of Overseas U.S. Editions at a substantial discount. (TAC ¶ 56a). Pearson's price quote and invoice provided that the "sole and exclusive jurisdiction to hear and determine any dispute or controversy arising under or concerning th[e] contract" would rest either in the New York County state courts or, "if the jurisdictional prerequisites exist at the time," the Southern District of New York. (TAC ¶ 56b & n.2). Second, in April 2009, the Dominican Defendants made similar representations to Plaintiff Cengage Learning, Inc. ("Cengage") that they intended to purchase books for sale in the Dominican Republic, leading Cengage to sell books to the Dominican Defendants at a discounted rate; these books were sold to SEB, rather than within the Dominican Republic. (TAC ¶ 56c).

Plaintiffs allege that the Dominican Defendants knew these statements were false when they made them and, indeed, that "[t]he entire purpose and intent of these companies was to deceive the Publishers into selling them Overseas US [Editions] and/or International Edition books at dramatic discounts." (TAC ¶¶ 57, 59). In light of these facts, Plaintiffs contend that "[w]hen Defendants Elmudesi and Levita sold International Editions to SEB, they knew or should have known that those books would be altered to be sold in the United States." (TAC ¶ 36). Plaintiffs also allege that Griffin, as an "owner/investor in . . . businesses" like Letiva profited from their earnings and positioned himself as a broker of each purchase transaction, earning a commission from each sale. (TAC ¶ 58).

## B. Affidavits

In addition to the allegations in the Third Amended Complaint, Plaintiffs have submitted

a declaration from Jones, with whom they have entered into a settlement agreement, describing Griffin's role in the Chop Shop and, particularly, in SEB, CBR, and Blackrock. Griffin, Elmudesi, and Letiva have each also submitted their own declarations attesting to their limited contacts with New York. Griffin also challenges the veracity of Jones' affidavit as contradictory to a previous declaration he has submitted in another action.

### 1. Griffin

Griffin attests that he is a Nashville, Tennessee resident and, with the exception of ten vacation visits over his 57 year life, has little or no connection with New York. (Griffin Decl. ¶¶ 2, 18). Specifically, he attests that he has not transacted business or engaged in business dealings with anyone in New York, and that he has not contracted to supply goods or services in New York; does not reside or have an office in New York; does not have a telephone, bank account, or mailing address in New York; does not rent or own property in New York; and does not have any employees or agents in New York. (Griffin Decl. ¶¶ 9-15). Moreover, he claims that he was merely a "passive investor" in CBR, SEB, and Blackrock, that Jones controlled these companies through a management company in which he has no ownership interest, and that he has never managed these companies' daily operations. (Griffin Decl. ¶¶ 3-5). He denies any knowledge of the rental or sale of textbooks into New York, denies knowledge of any business dealings by Jones or the other named Defendants in New York, and denies any role in any transactions with New York residents. (Decl. ¶¶ 7, 17). Finally, he attests that his investments in SEB, CBR, and Blackrock did not involve any actions in New York, that he had has never transacted business with Plaintiffs in New York or elsewhere, and that he never agreed to be bound by any agreements between Pearson and Letiva. (Griffin Decl. ¶¶ 6, 8, 16).

### 2. Jones

In response, Plaintiffs submit Jones's declaration, created as part of his obligations pursuant to his settlement agreement with Plaintiffs. (Jones Decl. ¶ 3). In most respects, Jones's declaration corroborates the allegations in the Third Amended Complaint regarding the scope of Griffin's activities. (*See, e.g.*, Jones Decl. ¶¶ 5-6, 13). For example, Jones notes the extent of Griffin's investment and ownership of CBR, SEB, and Blackrock; that Griffin had the ability to influence how the companies used the money he invested by, for example, rejecting a proposed website; and that he requested and received regular reports on these companies' performance, sometimes on an hourly basis. (Jones Decl. ¶ 6-7). He likewise attests that he and Griffin communicated by telephone on "virtually a daily basis," sometimes exchanging calls and texts multiple times per day, and visited the facilities in person or sent his representatives to discuss the companies' business. (Jones Decl. ¶¶ 8-10). Jones also states that Griffin attended a tradeshow to represent the companies, met with textbook suppliers, and let the companies use his warehouses to store textbooks under the supervision of his employees. (Jones Decl. ¶¶ 11-14). He claims Griffin knew of the Chop Shop operations, had visited Innovative Printing, and knew that the textbooks were bound for sale across the country, including New York.

More particularly, Jones claims that New York was "one of the top three states in which SEB and CBR did business, and accounted for a significant percentage of the Companies' revenue," a fact of which Griffin was aware. (Jones Decl. ¶ 15). In particular, he attests that he discussed these matters with Griffin and that Griffin knew the extent of the companies' sales from written reports. (Jones Decl. ¶ 16). The companies also "employed a sales representative to actively pursue business partners in New York," a matter Jones discussed with Griffin and that Griffin observed through software allowing them to track the locations of their sales representatives. (Jones Decl. ¶ 17). Moreover, Jones claims Griffin knew that SEB was

purchasing and selling textbooks in New York, including McGraw-Hill titles; that Griffin's warehouse was shipping textbooks to New York, a fact Griffin knew from observing packages at the warehouse; and that Griffin arranged for Jones to fly to New York multiple times on behalf of the companies. (Jones Decl. ¶¶ 18-20).

Griffin responds by submitting Jones's declaration from another matter in which Jones states that "Mr. Griffin has never had any involvement in the day to day affairs of CBR, SEB, ICS or any other business in which he has invested with me. I have always been the person who managed those businesses." (Staubitz Decl. Ex. 1 ¶ 24). He also attests that the plan with regard to SEB and Blackrock was that Griffin would provide the money and Jones would manage the business (Staubitz Decl. Ex. 1 ¶ 6), that Jones Management Corp. employs all of the employees and functions as the home office (Staubitz Decl. Ex. 1 ¶ 29), and that Jones was the "face of CBR and SEB" (Staubitz Decl. Ex. 1 ¶ 44).

3. Elmudesi and Letiva

Elmudesi and Letiva have both submitted declarations claiming that they too lack contacts in New York. According to these declarations, Elmudesi resides in Florida and Letiva is a Panamanian corporation domiciled in the Dominican Republic. (Elmudesi Decl. ¶ 1; Guilamo Decl. ¶ 3). Letiva asserts that it has never maintained an office or place of business in New York; maintains no business records in New York; has no presence in New York; does not own any property or rent property in New York, including research, development, or manufacturing facilities; and does not employ anyone in New York. (Guilamo Decl. ¶¶ 5-8, 14). Neither has it employed anyone in New York, contracted for work performed in New York, paid New York taxes, made sales in New York, shipped anything to New York, purchased books from two of the Plaintiffs with New York contacts, or been a party to litigation in New York.

(Guilamo Decl. ¶¶ 9, 11-12, 16-19). Letiva denies having a registered agent for service of process in New York and notes that it is not licensed or registered to do business in state. (Guilamo Decl. ¶¶ 10, 13). Elmudesi similarly disavows any such connections with New York. (Elmudesi Decl. ¶¶ 3-17). In addition, Guilamo attests that he does not recall seeing or agreeing to any provision in an invoice from Pearson stating that Letiva consented to jurisdiction in New York. (Guilamo Decl. ¶ 20).

## II. ANALYSIS

The Court begins by considering the request that this case be transferred to the Western District of Kentucky under 28 U.S.C. 1404(a). *See, e.g.*, *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 431 (U.S. 2007) (noting that "a federal court has leeway to choose among threshold grounds for denying audience to a case on the merits" and explaining that a *forum non conveniens* dismissal may precede a determination of personal jurisdiction (quotation marks omitted)); *Fort Knox Music, Inc. v. Baptiste*, 257 F.3d 108, 112 (2d Cir. 2001) ("The district court has th[e] power to transfer venue [under § 1404(a)] even if it lacks personal jurisdiction over the defendants."). Griffin contends that this case should be transferred to the Western District of Kentucky; Elmudesi, although initially contending that it should be transferred to Florida, has withdrawn that request and now concurs with Griffin. (Griffin Mot. at 11; Elmudesi PJ Mot. at 12; Elmudesi PJ Reply at 9). Letiva is silent on these requests, other than contending that venue does not lie in the Southern District of New York.

A motion to transfer involves two inquiries: first, whether the action might have been brought in the proposed transferee court, in this case the Western District of Kentucky, and second whether transfer is warranted for the convenience of the parties and witnesses, and in the interest of justice. *See* 28 U.S.C. § 1404(a); *Herbert v. Elec. Arts, Inc.*, 325 F. Supp. 2d 282, 285

(S.D.N.Y. 2004). The party seeking to transfer a case carries the burden of making out a strong case for transfer, and courts evaluate such motions under a clear and convincing evidence standard. *See New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 113-14 (2d Cir. 2010).

On the first inquiry, Griffin argues that this case could have been brought in the Western District of Kentucky, noting that venue would be appropriate under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims in this action occurred there. (Griffin Mot. at 11); *see also* 28 U.S.C. § 1400(a) (venue is appropriate in copyright cases in any district in which the defendant or his agent resides or may be found); *AEC One Stop Group, Inc. v. CD Listening Bar, Inc.*, 326 F. Supp. 2d 525, 529 (S.D.N.Y. 2004). Plaintiffs do not contest that the action could have been brought in that district, choosing instead to focus on whether transfer is warranted under the familiar factors considered with respect to a transfer motion, namely: (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, (7) the relative means of the parties, (8) the comparative familiarity of each district with the governing law, and (9) judicial economic and the interests of justice. *New York Marine & Gen. Ins. Co.*, 599 F.3d at 112; *Tomjai Enters., Corp. v. Laboratorie Pharmaplus U.S.A., Inc.*, No. 12-cv-3729, 2012 U.S. Dist. LEXIS 107033, at *12-20 (S.D.N.Y. July 29, 2012).

### A.    Locus of Operative Facts

"The locus of operative facts is a primary factor in determining whether to transfer venue." *Tomjai Enters.*, 2012 U.S. Dist. LEXIS 107033, at *17 (quotation marks omitted); *Am.*

*S.S. Owners Mut. Prot. & Indem. Ass'n v. Lafarge N. Am., Inc.*, 474 F. Supp. 2d 474, 485 (S.D.N.Y. 2007) (looking to the location of the "center of gravity" in the case in assessing this factor).

The Court concludes that although there is some basis for finding that New York is a locus of operative fact for this action, the better view is that the Western District of Kentucky is the center of gravity of this case. Beginning with a review of the claims at issue, in cases of copyright infringement, the operative facts typically relate to the design, development, and production of an infringing product, suggesting the locus of operative facts is in the Western District of Kentucky, where the Chop Shop operated. *See, e.g., AEC One Stop Group, Inc.*, 326 F. Supp. 2d at 530; *see also Capitol Records, LLC v. VideoEgg, Inc.*, 611 F. Supp. 2d 349, 367-68 (S.D.N.Y. 2009). By contrast, in trademark infringement cases courts often hold that the locus of operative facts is the initially chosen forum if acts of infringement, dilution, or unfair competition have occurred in that forum. *See CYI, Inc. v. Ja-Ru, Inc.*, 913 F. Supp. 2d 16, 19 (S.D.N.Y. 2012). Application of this rule would suggest that New York may also be a locus of operative facts, at least as to Plaintiffs' trademark counterfeiting claim. Indeed, the Jones Declaration provided in this matter claims that New York is one of the top three markets for CBR and SEB, although it does not quantify the amount or percentage of sales in this district or elsewhere.

However, where infringing items are sold in more than one district—and particularly where the products have been sold nationwide—a number of decisions have expressed skepticism that the location of these sales determines the locus of operative facts. *See, e.g., Mola, Inc. v. Kacey Enters., LLC*, No. 10-cv-1045S, 2011 U.S. Dist. LEXIS 93040, at *22-23 (W.D.N.Y. Aug. 21, 2011); *Hilti Aktiengesellschaft v. Milwaukee Elec. Tool Corp.*, No. 04-cv-

629, 2004 U.S. Dist. LEXIS 16373 (E.D.N.Y. July 19, 2004). Indeed, the undersigned has commented in another case that a rigid adherence to this rule regarding in-district sales would "conflate two of the factors the Court is to consider: the Court's assessment of the locus of operative facts would largely be subsumed by the Plaintiff's choice of forum." *CYI, Inc.*, 913 F. Supp. 2d at 20-21.

In light of these considerations and looking to the allegations of the Third Amended Complaint and the other materials submitted by the parties, the Court concludes that the locus of operative facts in this case is the Western District of Kentucky. Specifically, the Third Amended Complaint alleges that the Chop Shop scheme was executed in Kentucky—indeed, the Plaintiffs themselves describe the Defendants' conduct as "THE CHOP SHOP SCHEME IN KENTUCKY." (TAC at 10; *see also* TAC ¶¶ 50, 56c; 62; *cf.* FAC ¶¶ 1-2, 9, 12-17, 42). In contrast, the only alleged event that gives rise to the claims in this litigation that connect it to the Southern District of New York is the sale of some unspecified number of the infringing textbooks here—a consideration of substantially diminished weight given that Plaintiffs acknowledge that such sales were nationwide. (TAC ¶¶ 67; Jones Decl. ¶ 14-15; Pls. Opp. to Elm. Mot. at 11). Thus, looking to the "center of gravity of the litigation," the "core determination" under § 1404(a), the Court concludes that the locus of operative facts weighs significantly in favor of transfer. *See, e.g.*, *Tillery v. NYS Office of Alcoholism & Substance Abuse Servs.*, No. 13-cv-0035, 2013 U.S. Dist. LEXIS 173164, at *12-13 (S.D.N.Y. Dec. 5, 2013); *Schuur v. Walt Disney Co.*, No. 98-cv-2212, 1998 U.S. Dist. LEXIS 5540, at *10-11 (S.D.N.Y. Apr. 20, 1998).[1]

---

[1] In sections of their opposition briefs to Elmudesi and Letiva's motions, Plaintiffs gesture at an argument that Elmudesi or Letiva received price quotes and an invoice that also contained a forum selection clause requiring that disputes concerning its purchase of books from Plaintiff Pearson shall be resolved in New York and, in particular, in this district. Plaintiffs do not, however, argue that Griffin was a party to this clause, that it actually governs any of

## B.     Plaintiffs' Choice of Forum

A plaintiff's choice of forum is entitled to considerable weight and is generally not disturbed unless the balance of the factors strongly favors transfer. *See Tomjai Enters.*, 2012 U.S. Dist. LEXIS 107033, at \*13-14; *Am. S.S. Owners Mut. Prot. & Indem. Ass'n.*, 474 F. Supp. 2d at 486. However, where the forum selected is not the plaintiff's home forum or the place where the operative facts of the action occurred, courts have held that this diminishes the weight assigned to this factor. *See Tomjai Enters.*, 2012 U.S. Dist. LEXIS 107033, at \*13-14; *Frame v. Whole Foods Market, Inc.*, No. 06-cv-7058, 2007 U.S. Dist. LEXIS 72720, at \*12-13 (S.D.N.Y. Sept. 24, 2007). Here, two of the four plaintiffs have a connection to New York: McGraw-Hill Global Education, LLC ("McGraw-Hill") is a New York corporation with its principal place of business in this district and John Wiley & Sons, Inc. ("John Wiley") is a New York corporation with its principal place of business in New Jersey. (TAC ¶¶ 14, 17). This factor therefore tips in favor of retaining the action in this district, although not as heavily as it might if the forum bore a more substantial relationship to the facts underlying the litigation. *See, e.g.*, *Capitol Records, LLC*, 611 F. Supp. 2d at 368 ("However, the emphasis placed by a court on this choice diminishes where the operative facts upon which the litigation is brought bear little material connection to the chosen forum." (quotation marks omitted)).

## C.     Convenience of the Witnesses

The convenience of the witnesses has been held to be the most important factor in considering whether to transfer a case under § 1404(a). *Pilevesky v. Suntrust Bank*, No. 10-cv-2290, 2010 U.S. Dist. LEXIS 124308, at \*6 (E.D.N.Y. Nov. 22, 2010); *Herbert*, 325 F. Supp. 2d

---

the claims at issue in this litigation, or that it weighs against the transfer of this case. Rather, they appear to mention this clause merely to argue that, for personal jurisdiction and due process purposes, Elmudesi and Letiva could reasonably have anticipated being haled into court in New York. (Pls. Opp. to Elm. Mot. at 11; Pls. Opp. to Letiva Mot. at 12). Having failed to make the argument that this clause governs which forum should hear this case or present any argument as to how this clause applies to the claims at issue, the Court finds that Plaintiffs have waived these arguments.

at 286. The Court weighs more heavily the convenience of non-party witnesses than party witnesses in conducting this analysis. *MASTR Asset Backed Sec. Trust 2007-WMC1 v. WMC Mortg. LLC*, 880 F. Supp. 2d 418, 422 (S.D.N.Y. 2012); *Pilevesky*, 2010 U.S. Dist. LEXIS 124308, *8 (collecting cases). As a rule, a party seeking a transfer must provide the Court with a specific list of the probable witnesses who will be inconvenienced if required to testify in the present forum. *Kiss My Face Corp. v. Bunting*, No. 02-cv-2645, 2003 U.S. Dist. LEXIS 17096, at *5-6 (S.D.N.Y. Sept. 29, 2003) (finding this factor weighed against transfer because the defendant failed to demonstrate which witnesses would be inconvenienced absent transfer); *NBA Props., Inc. v. Salvino, Inc.*, No. 99-cv-11799, 2000 U.S. Dist. LEXIS 3799, at *14 (S.D.N.Y. Mar. 27, 2000). The Court is to assess not just the number of witnesses, but also the materiality of their proposed testimony to the action. *See AEC One Stop Group*, 326 F. Supp. 2d at 529; *Herbert*, 325 F. Supp. 2d at 286.

Beginning with the proposed third-party witnesses, Plaintiffs identify four such witnesses they may call to testify, although Plaintiffs concede that none of them reside in the Southern District of New York or the Western District of Kentucky and do not provide the proposed testimony of most of these witnesses. (Oppenheim Decl. ¶ 9(a)-(d)). Plaintiffs do not argue that it would be more convenient for these witnesses if this action were maintained in the Southern District of New York than the Western District of Kentucky (Pls. Opp. to Griffin Mot. at 18-19), and the Court concludes that the convenience these proposed witnesses does not favor either forum.

Plaintiffs also identify five potential party witnesses residing in or near the New York area whom Plaintiffs may call to testify at trial: two named employees of Pearson, a named employee of John Wiley, and two unnamed representatives of Cengage and McGraw-Hill.

(Oppenheim Decl. ¶8). The substance of these witnesses' proposed testimony relates to the Plaintiffs' copyrights and trademarks; the nature, purchase, and rental of the alleged counterfeit textbooks; the Plaintiffs' business relationship with Defendants; and the Plaintiffs' practices with regard to overseas purchasers of textbooks. (Oppenheim Decl. ¶ 8). Plaintiffs also state that they may call Elmudesi, who resides in Florida, as a witness—although they inaccurately characterize him as a "third party witness." (Oppenheim Decl. ¶ 9(e)).

As to Griffin, he identifies Jones, Innovative Printing, and the other "corporate entities" involved in the alleged Chop Shop as potential witnesses, and notes that all are located in the Western District of Kentucky. (Griffin Mot. at 12; Griffin Reply at 9; Jones Decl. ¶ 2). The relevance of the testimony of these individuals or entities—and Griffin himself, who is located in Nashville, Tennessee—is self-evident.

Griffin does not formally list those third-party witnesses whom he believes may be called to testify at trial. He notes, however, that "Plaintiffs have already deposed four Murray-based witnesses in nearby Bowling Green, Kentucky," and a declaration submitted with his reply brief attaches the cover pages of the depositions of Marc Peebles, Michael Utley, Jeremy B. Latimer, and James W. Byars, and select pages from these depositions. Although these submissions do not facially state these witnesses were deposed in Kentucky, Plaintiffs' initial Complaint in this matter alleges that at least Byars and Peebles are based in Murray, Kentucky, and that Byars is "an employee of CAJM and President of CBR" and Peebles "oversees and runs the operations of Innovative." (Compl. ¶ 9, 12). *See Austin v. Ford Models*, 149 F.3d 148, 155 (2d Cir. 1998) ("The amendment of a pleading does not make it any less an admission of the party" (quotation marks omitted)); *United States v. GAF Corp.*, 928 F.2d 1253, 1259-60 (2d Cir. 1991) (noting that when a pleading is amended or withdrawn, the superseded portion ceases to be a conclusive

judicial admission but remains a statement once seriously made by an authorized agent, and is still competent evidence of the facts stated). Based on the transcripts provided, it appears that at least Peebles and Byars may have information regarding the scope of Griffin's involvement in the alleged Chop Shop scheme and the operation of that scheme.

On balance, the Court concludes that this factor favors transfer, although not overwhelmingly. Both sides have identified potential witnesses who would be inconvenienced whether this case is transferred or retained in this district, but the core witnesses with knowledge of the Chop Shop operations are located in or near the Western District of Kentucky. Likewise, Plaintiffs have identified only party witnesses who would be inconvenienced, whereas Jones, Peebles, and Byars are all no longer named as Defendants in this action.

### D. Convenience of the Parties

"[T]he convenience of the parties is often connected to the convenience of their respective witnesses," *ESPN, Inc. v. Quiksilver, Inc.*, 581 F. Supp. 2d 542, 549-50 (S.D.N.Y. 2008). Because the analysis above regarding the convenience of the witnesses addresses many of the issues surrounding the convenience to the parties, the Court does not assign much weight to this factor. *See id.* (finding this factor duplicative where the analysis was entirely grounded on the convenience of the witnesses). Moreover, the Court concludes that this factor does not militate either for or against transfer. As discussed above, Defendants in this case are not found in New York and lack any connection to the forum that suggests that it would be convenient for them to litigate in this district.[2] Plaintiffs, however, are located in and around the Southern District of New York and would likely be inconvenienced by the transfer of this case to the Western District of Kentucky.

---

[2] Elmudesi is located in Florida, but having requested the case be transferred to the Western District of Kentucky he is considered to have waived any inconvenience attendant to litigating in that district. *See Ontel Prods. v. Project Strategies Corp.*, 899 F. Supp. 1144, 1154 (S.D.N.Y. 1995).

Plaintiffs also contend that a transfer to the Western District of Kentucky would burden them because their counsel are not admitted to practice in that state. (Oppenheim Decl. ¶ 11) The Court assigns little weight to this argument given the availability of local counsel, the possibility of admission *pro hac vice*, and the general rule that the location of counsel is typically not considered in § 1404(a) motions. *See Legrand v. City of New York*, No. 09-cv-9670, 2010 U.S. Dist. LEXIS 19011, at *5 (S.D.N.Y. Mar. 3, 2010) ("The location of counsel is not ordinarily entitled to any weight in this analysis."); *Frobes v. Stryker Corp.*, No. 08-cv-1897, 2009 U.S. Dist. LEXIS 102034, at *15 (E.D.N.Y. July 29, 2009); *Azari v. B&H Photo Video*, No. 06-cv-7825, 2007 U.S. Dist. LEXIS 12, at *9 (S.D.N.Y. Jan. 3, 2007).

### E.    Location of Relevant Documents and Ease of Access to Sources of Proof

As the accused infringers, Defendants are likely to produce the bulk of the relevant evidence in this case. *See Tomjai Enters.*, 2012 U.S. Dist. LEXIS 107033, at *15-16; *ESPN*, 581 F. Supp. 2d at 548-49; *AEC One Stop Group*, 326 F. Supp. 2d at 530. Given the location of the alleged Chop Shop, the Court finds it is likely that much of the discovery material will be found in Kentucky. However, Plaintiffs also argue that they maintain documents in and around New York—although they do not specify that these documents bear any particular relationship to this litigation. (Oppenheim Decl. ¶ 10). Regardless, this factor is entitled to relatively little weight in the modern era of "faxing, scanning, and emailing documents." *Am. S.S. Owners Mut. Prot. & Indem. Ass'n*, 474 F. Supp. 2d at 484; *see also ESPN*, 581 F. Supp. 2d at 548. This factor is neutral. *See Herbert*, 325 F. Supp. 2d at 289.

### F.    Availability of Process

Plaintiffs fail to address this factor. Griffin asserts that it favors transfer of the case, but does not explain this contention or identify any individual who might not be subject to subpoena

power or who would be unwilling to testify in New York should the case remain here. This factor is neutral. *See CYI, Inc.*, 913 F. Supp. 2d at 25.

## G. Relative Means of the Parties

Griffin contends that the relative means of the parties weights in favor of transfer, arguing that the Plaintiffs are "sophisticated multi-national publishing companies." (Griffin Mot. at 12). Plaintiffs, in turn, contend that this factors is "of little significance," noting that "if Griffin were to put forward information about his means, Plaintiffs believe it would demonstrate very considerable assets"—a point corroborated by the record evidence that has been presented. (*See, e.g.*, Jones Decl. ¶ 6 (noting that Griffin invested approximately $30 million in CBR, SEB, and Blackrock over a few year period). This factor is neutral.

## H. Familiarity With Governing Law

Neither party contends that either the Western District of Kentucky or the Southern District of New York is more familiar with the governing law, and the Court agrees. (Griffin Mot. at 12; Pls. Opp. to Griffin Mot. at 21); *see also AEC One Stop Group, Inc.*, 326 F. Supp. 2d at 531 (this factor is given little to no weight in federal courts). This factor is neutral.

## I. Trial Efficiency and the Interests of Justice

Roughly six weeks after the Complaint in this matter was filed, Griffin filed at least one action in the Western District of Kentucky which relates, in part, to the claims at issue here. *See* Compl., *Griffin v. Jones*, 5:12-cv-00163 (W.D. Ky. Nov. 20, 2012). Among other things, that suit alleges that "[b]y causing SE[B] and CBR to be used in the business of buying and selling international editions as U.S. editions, C. Jones . . . created a strong likelihood of having the Companies incur exposure by violating state and federal law, including but not limited to the Copyright Act [and] Section 43(a) of the Lanham Act." *Id.* ¶ 50. Griffin's action in the Western

District of Kentucky, therefore, will hinge at least in part on the same facts and issues as the present litigation. Plaintiffs have not responded to Griffin's argument that this counsels in favor of transfer.

"Courts consistently recognize that the existence of a related action in the transferee district is a strong factor to be weighed with regard to judicial economy; it can be decisive." *Brown v. New York*, 947 F. Supp. 2d 317, 325-26 (E.D.N.Y. 2013) (quotation marks, alterations, and internal citations omitted); *JetBlue Airways Corp. v. Helferich Patent Licensing, LLC*, No. 12-cv-5847, 2013 U.S. Dist. LEXIS 28439, at *40 (E.D.N.Y. Feb. 28, 2013) (noting that the interest in efficiency and avoiding inconsistent results can be decisive even when the other factors would normally sustain the choice of forum). Thus, the existence of a related action in the transferee district weighs heavily in favor of transfer when considering judicial economy and the interests of justice. *Brown*, 947 F. Supp. 2d at 325-26 (noting that this factor can be "decisive").

Furthermore, the Court's review of the parties' submissions on personal jurisdiction also counsels in favor of transfer, as the Court believes there is a substantial question as to whether personal jurisdiction over Elmudesi and Letiva lies in this district. *See SBAV LP v. Porter Bancorp, Inc.*, No. 13-cv-372, 2013 U.S. Dist. LEXIS 96399, at *33-34 (S.D.N.Y. July 10, 2013) ("If [the action] were to stay in the Southern District of New York, there is a substantial possibility that the claims against one or more individual defendants would have to be dismissed for lack of personal jurisdiction."); *see also Katiroll Co. v. Kati Roll & Platters, Inc.*, 10-cv-1703, 2010 U.S. Dist. LEXIS 70977, at *14-15 (S.D.N.Y. July 9, 2010) ("Moreover, if the issue of whether the transferor court has personal jurisdiction over the defendant is a difficult one, transfer to a district where jurisdiction is certain may be in the interest of justice because it may

conserve judicial resources."); *Credit Suisse Sec. (USA) LLC v. Hilliard*, 469 F. Supp. 2d 103, 112 (S.D.N.Y. 2007) ("Transfer is often appropriate in cases in which there is a serious question as to whether the court has personal jurisdiction over defendants."). In particular, Plaintiffs premise their personal jurisdiction arguments on a theory that Elmudesi and Letiva conspired with the other defendants and that, therefore, the actions of the other defendants may be attributed to Elmudesi and Letiva. It is far from clear, however, that Plaintiffs could demonstrate the elements required to make this showing, particularly as to whether Elmudesi or Letiva were aware that their actions would have effects in New York or that they controlled their alleged co-conspirators. *See, e.g.*, *Emerald Asset Advisors v. Schaffer*, 895 F. Supp. 2d 418, 429-35 (E.D.N.Y. 2012) (noting that, among other things, courts conducting this inquiry consider whether (1) the out-of-state co-conspirator had an awareness of the effects of the activity in New York, (2) the New York co-conspirators' activity was for the benefit of the out-of-state conspirators, and (3) the co-conspirators in New York acted at the behest of, on behalf of, or under the control of the out-of-state conspirators); *Sea Trade Mar. Corp. v. Coutsodontis*, No. 09-cv-488, 2012 U.S. Dist. LEXIS 119206, at *19-27 (S.D.N.Y. Aug. 15, 2012) (same); *Best Cellars, Inc. v. Grape Finds at Dupont, Inc.*, 90 F. Supp. 2d 431, 445-47 (S.D.N.Y. 2000) (same); *see also E-Z Bowz, L.L.C. v. Prof'l Prod. Research Co.*, No. 00-cv-8670, 2003 U.S. Dist. LEXIS 15256, at *26-27 (S.D.N.Y. Sept. 5, 2003) (suggesting that the theory of conspiracy jurisdiction is inapplicable to § 302(a)(1) of New York's long-arm statute).

In contrast, it appears personal jurisdiction exists in Kentucky. First, the Court notes that Griffin and Elmudesi have both requested that this case be transferred to the Western District of Kentucky and no one, including Plaintiffs, has argued that personal jurisdiction does not lie in

that district.[3]  Second, a review of the Third Amended Complaint and declarations in this action suggests that personal jurisdiction over Griffin, Letiva, and Elmudesi lies in that district. *See, e.g.*, Kentucky Revised Statute § 454.210; *LaCorte Elec. Constr. & Maintenance v. Centron Sec. Sys.*, 894 F. Supp. 80, 83 (N.D.N.Y 1995).  Griffin had substantial contacts with Kentucky in connection with the events giving rise to the causes of action asserted in the Third Amended Complaint including, among other things, through his alleged role in managing and supervising the Kentucky-based corporations involved in the Kentucky-based Chop Shop scheme.  Similarly, Letiva and Elmudesi were involved in the sale and shipment of the International Edition textbooks to these Kentucky-based corporations, allegedly with knowledge of the unlawful nature of these sales.

## III. CONCLUSION

Having considered the relevant factors the Court finds by clear and convincing evidence that this matter should be transferred to the Western District of Kentucky.  The connection of this matter to New York is tenuous and the locus of operative facts, a "primary" factor in the analysis, points toward the transfer of this action.  Likewise, trial efficiency and the interests of justice strongly counsel in favor of transfer both due to existence of one or more proceedings in Kentucky implicating the facts at issue here and the questionable basis for personal jurisdiction over at least Elmudesi and Letiva.  The convenience of the witnesses, an important factor in assessing transfer motions, also suggests that transfer is warranted. The only factor pointing in favor of retaining jurisdiction in this district is that Plaintiffs chose the Southern District of New York as their forum.  The Court concludes this is insufficient to warrant maintaining the action here in light of the other factors.

---

[3] Griffin, in particular, argues that "[j]urisdiction in the Western District of Kentucky is appropriate" because a substantial part of the events giving rise to the claims occurred in Murray, Kentucky. (Griffin Mot. at 11). Elmudesi "concurs with Defendant David Griffin" on the transfer request. (Elmudesi Reply at 9).

Griffin's motion to transfer is GRANTED. Elmudesi and Letiva's motions to dismiss for lack of personal jurisdiction or improper venue in New York are denied as moot, as is that portion of Griffin's motion raising these arguments. The Court does not reach Elmudesi or Letiva's motions to dismiss for failure to state a claim. This resolves docket numbers 117, 121, and 145.

Dated: March ____, 2014
New York, New York

_____
ALISON J. NATHAN
United States District Judge