MCGRAW-HILL GLOBAL EDUCATION,
LLC, *et al.*   Plaintiffs,

v.

DAVID GRIFFIN, *et al.*,   Defendants,

and

DAVID GRIFFIN,   Third-Party Plaintiff,

v.

CHARLES A. JONES and
C.A. JONES MANAGEMENT GROUP, LLC,   Third-Party Defendants.

## MEMORANDUM OPINION

This matter comes before the Court upon the Motion to Dismiss of Third-Party Defendants Charles A. Jones and C.A. Jones Management Group, LLC, (collectively, "Jones"), who ask the Court to dismiss the third-party claims levied against them by Defendant David Griffin. (Docket No. 214.) Griffin has responded, (Docket No. 214), and Jones has replied, (Docket No. 219). Fully briefed, this matter is ripe for adjudication. For the reasons set forth below, the Court will GRANT Jones' Motion to Dismiss.

**Factual Background**

This action contributes another chapter to the continuing saga of litigation concerning Griffin, Jones, and their soured business relationship: since 2012, the two have been involved in eight lawsuits in Kentucky state and federal courts, to say nothing of those raised in Tennessee. As such, the Court is familiar with the intertwined entities co-owned by Griffin and Jones. As required when deciding a motion to dismiss, the Court presumes that the allegations in the complaint are true. *Total Benefits*

*Planning Agency v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008). Taking them as true, a brief summary of the facts resulting in this action follows.

As of the filing of Griffin's Amended Third-Party Complaint, Griffin owned a fifty-percent share of Integrated Computer Solutions, Inc., ("ICS") and a fifty-percent share of Blackrock Investments, LLC ("BRI"). Jones owned the remaining fifty-percent shares of both ICS and BRI. These companies, in turn, were each part-owners of two college textbook companies: ICS owned 8% interests in SE Book Company, LLC ("SEB") and College Book Rental Company, LLC ("CBR"), with BRI owning the remaining 92% interests in each company. In his initial capacity as manager of both SEB and CBR, Charles A. Jones outsourced management of the companies to C.A. Jones Management Group, LLC ("the Management Company "), of which he served as Chief Executive Officer.

In the underlying lawsuit, Plaintiffs McGraw-Hill Global Education, LLC, Pearson Education, Inc., Cengage Learning, Inc., and John Wiley & Sons, Inc. ("the Publishers") allege that Griffin collaborated with others to craft an intricate plan to maximize the profits of SEB and CBR, the textbook companies. The Publishers contend that Griffin knowingly purchased "International Edition" textbooks at a lower price than that available domestically. According to the Publishers, Griffin purchased these books from nontraditional suppliers, including various companies located in the Dominican Republic. The Publishers further allege that Griffin bought steeply discounted U.S. Edition textbooks, specially priced for distribution in developing companies. Griffin, the Publishers say, was not a third-world bookseller, but a bargain-hunter who intended to nefariously sell or rent the books in the United States.

Although indicia on many of the books specified that they were not authorized for sale in the United States, the Publishers contend that Griffin and Jones instructed their employees to "remov[e] the markings with hot irons or dremmels, cover[] them with 'USED' stickers, remov[e] copyright pages, replac[e] ISBN numbers, us[e] slicers to trim edges," and otherwise alter the books. (Docket No. 103 at 3.) The Publishers also claim that Griffin and Jones reproduced textbook covers and other pages

containing trademark and/or copyright information, creating "chop shop editions" to be placed in their inventory.

The Publishers' original Complaint alleged various claims under the Copyright Act and the Lanham Act against numerous Defendants, including Jones and the Management Company. Griffin was not subject to this Complaint. (*See* Docket No. 1.) Ultimately, the Publishers settled their claims against Jones and the Management Company, (Docket No. 68), and named Griffin as a Defendant, (Docket No. 103).

In his Amended Third-Party Complaint against Jones and the Management Company, Griffin elaborates upon (and distances himself from) the alleged scheme. (Docket No. 210.) According to Griffin, in late 2008 or early 2009, he and Jones traveled to the Dominican Republic to meet business contacts, including Michael Elmudesi. Griffin alleges that some months later, Jones, the Management Company, and their counsel—with no involvement from Griffin—cooperated with Elmudesi to create at least four Dominican entities ("the Dominican Companies") that would purchase discounted International Editions from the Publishers, falsely representing that the books would be distributed to Dominican students. Instead, Griffin says, Jones and the Management Company then caused SEB and CBR, the Murray, Kentucky textbook companies, to purchase the international books themselves. Griffin denies any involvement in the creation, operation, or ownership of the Dominican Companies, maintaining instead that Jones, the Management Company, and others maintained full control—including oversight of the purported purchase of international books and the sale of those books to SEB and CBR.

Griffin alleges that after Jones settled with the Publishers, who dismissed their claims against him, Jones provided the Publishers with false information regarding Griffin's involvement in the alleged misdeeds. He now alleges breach of fiduciary duty and seeks common-law indemnification for the Publishers' claim of fraud. (Docket No. 210.)

## Standard

The Federal Rules of Civil Procedure require that pleadings, including complaints, contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint may be attacked for failure "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "In deciding a Rule 12(b)(6) motion, a district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true. But the district court need not accept a bare assertion of legal conclusions." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (internal citations and quotation omitted).

A complaint need not allege specific facts so long as it provides a defendant with fair notice of the claim and the basis thereof. *See Erickson v. Pardus*, 551 U.S. 89. 93 (2007). However, even though a "complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 US. 544, 555 (2007) (citations omitted). Instead, the plaintiff's [f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted). A complaint should contain enough facts "to state a claim to relief that is plausible on its face." *Id.* at 570. A claim becomes plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). If, from the well-pleaded facts, the court cannot "infer more than the mere possibility of misconduct, the complaint has alleged — but has not 'show[n]— that the pleader is entitled to relief." *Id.* at 1950 (citing Fed. R. Civ. P. 8(a)(2). "Only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.*

**Analysis**

In his Amended Third-Party Complaint, Griffin alleges claims against Jones and the Management Company for breach of fiduciary duty. He also seeks indemnification in the event that he is found liable to the Publishers for their fraud claim against him. The Court will address each of Griffin's claims in turn.

**I.      Breach of fiduciary duty**

Griffin first alleges that as manager of SEB and CBR—the Murray, Kentucky textbook companies—both Charles A. Jones and the Management Company owed statutory and common law fiduciary duties to SEB, CBR, and Griffin. Griffin contends that Jones breached these duties by "causing SEB and CBR to purchase International Books from Jones' and [the Management Company's] Dominican Companies after the Dominican Companies had purchased the International Books by making misrepresentations to the Publishers." (Docket No. 210 at 5-6.) In the instant Motion, Jones claims that Griffin has asserted a virtually identical breach of fiduciary duty claim against them in a prior lawsuit: *Griffin v. Jones, et al.*, Case No. 5:12-cv-00163 (Western District of Kentucky). (*See* Docket No. 214-2, First Amended Complaint.) He submits that Kentucky law precludes Griffin from prosecuting two actions at the same time for the same cause.

Griffin claims that Jones misreads the *Griffin v. Jones* Complaint, which did not result from any alleged actions in the Dominican Republic. Griffin first notes that the Publishers' fraud claim concerning the Dominican Companies was initially filed on June 3, 2013—almost six months after Griffin filed the Amended Complaint in the 2012 *Griffin v. Jones* lawsuit. (*See* Docket No. 103; *see also Griffin v. Jones*, Case No. 5:12-cv-00163-TBR, Docket No. 18 (filed Dec. 20, 2012).) This chronology means Griffin could not have included the allegations concerning the Dominican Companies in his 2012 Amended Complaint. Griffin further distinguishes the two lawsuits' complaints by noting that the 2012 *Griffin v. Jones* lawsuit does not discuss the Dominican Companies or Jones' relationships to them. Griffin concludes, therefore, that the breach of fiduciary duty claims in this lawsuit are rooted in facts wholly

5

distinct from those underlying the 2012 breach of fiduciary duty claim. For the reasons explained below, however, the Court cannot agree.

The Court first turns to the rule of abatement: that is, the principle when a court assumes jurisdiction over a certain case's subject matter, that court maintains exclusive authority and control over the action until the case's final disposition. *Annie Gardner Foundation v. Gardner*, 375 S.W.2d 705, 707 ("[A] second action based on the same cause will generally be abated where there is a prior action pending between the same parties involving substantially the same subject matter and in which prior action the rights of the parties may be adjudged.") A safeguard to litigants, the doctrine was crafted to avert the harassment of multiple actions involving the same parties and concerning the same cause. *Id.* at 708 (citing *Conley v. Marshall*, 202 S.W.2d 382 (Ky. 1947)). The rule of abatement applies only when the cause of action, the parties, and the relief or remedy sought are identical or substantially similar: "The rule of abatement does not apply where the second suit has merely a close connection with the other action." *Riddle v. Howard*, 357 S.W.2d 705, 708 (Ky. 1962). Moreover, because "a plea in abatement is a technical and dilatory plea," a district court should not permit it "unless the pleader clearly shows that his situation comes within the reason for the rule." *Gardner*, 385 S.W.2d at 708.

For a lawsuit to be abated, "it must appear that (1) the parties in the second suit are substantially the same as the parties in the prior suit, and (2) these parties will be afforded an adequate and complete opportunity for the adjudication of their rights and for obtaining the remedy they desired in the first suit." *Id.* Clearly, the first element is satisfied, with Griffin prosecuting and Jones and the Management Company defending the relevant action in each case. Therefore, the Court must determine whether the first suit affords the parties a full and adequate opportunity to effectuate their rights and remedies. *See id.*

Jones submits that the two lawsuits contain virtually the same allegations, with each focusing upon the purchase and alteration of International Edition textbooks. (*See* Docket No. 214-2, *Griffin v. Jones* First Amended Complaint, ¶¶ 68, 72-75; Docket No. 103, ¶¶ 35-52.) Griffin references the

6

Publishers' lawsuit in his filings in *Griffin v. Jones* and incorporates by reference their allegations. (Docket No. 214-2, ¶¶ 73-75.)

Griffin responds that his third-party claim in the instant action is grounded upon facts and conduct unique to this case: namely, that the Jones and the Management Company breached their fiduciary duties to Griffin by establishing the Dominican Companies, causing them to fraudulently purchase textbooks from the Publishers, and causing SEB and CBR to purchase such books from the Dominican Companies. Griffin therefore argues that his rights regarding the breach of fiduciary duty claim do not involve the same conduct alleged in the 2012 *Griffin v. Jones* lawsuit. Consequently, he reasons, the claims in the instant lawsuit can be properly adjudicated only in the instant case.

The Court will consider the specific language of each of the Complaints to determine whether the doctrine of abatement applies. In the instant action, Griffin's Amended Third-Party Complaint includes the following allegations:

> 14. Jones and [the Management Company] caused the Dominican Companies to purchase International Books from the Publishers, and, according to the Publishers, misrepresented to the Publishers that the International Books were for Dominican Republic students.
> 15. According to the Publishers, after the Dominican Companies purchased the International Books, Jones and CJM caused SEB and CBR to purchase the International Books.
> . . .
> 23. Jones and [the Management Company] wantonly and/or recklessly breached those [fiduciary] duties by engaging in the conduct described herein, including but not limited to, causing SEB and CBR to purchase International Books from Jones' and [the Management Company's] Dominican Companies after the Dominican Companies had purchased the International Books by making misrepresentations to the Publishers. As a result, the Publishers seek damages from Griffin for misrepresentation.

(Docket No. 210.)

The same story unfolds in the allegations of *Griffin v. Jones*'s First Amended Complaint:

> 68. [A receiver] conducted an investigation of books in CBR's inventory and found that numerous textbooks which were supposed to be U.S. editions were in reality international edition textbooks. These

7

> international edition textbooks had been altered so as to appear to be U.S. edition textbook[s] by covering the body of the international edition with a copy of a U.S. edition cover. In other words, C. Jones and [the Management Company] caused SEB and CBR to be used in the business of buying and selling international editions as U.S. editions in violation of state and federal law . . . .
>
> . . .
>
> 72. Employees of SEB, CBR, and [the Management Company] have acknowledged that C. Jones made several large purchases of international edition textbooks from multiple sources. Those international edition textbooks were altered or rebound and then inserted into SEB's or CBR's inventories as U.S. editions. Upon information an belief, [the Management Company] and C. Jones then transferred legitimate U.S. edition textbooks from SEB's and CBR's inventories to . . . entities controlled by C. Jones or [the Management Company]. The U.S. edition textbooks were then sold in direct competition with SEB and CBR, and for the exclusive benefit and profit of C. Jones and [the Management Company].
>
> . . .
>
> 74. As alleged in the McGraw-Hill Lawsuit, Jones worked with accomplices . . . to purchase large quantities of cheap, international edition textbooks which could not be legally imported and sold in the United States. Jones then oversaw the alteration or rebinding of the textbooks to conceal their international origin. This allowed Jones to replace legitimate (and more expensive) U.S. edition textbooks in SEB's and CBR's inventories with cheaper international editions, and then sell the more expensive U.S. editions . . . for the exclusive profit of Jones and his co-conspirators.

(Docket No. 214-2, *Griffin v. Jones* First Amended Complaint, ¶¶ 68, 72, 74.)

To be sure, the level of detail of the two complaints varies: for example, the instant lawsuit alleges that "Dominican Republic editions" were at issue, as opposed to the more general "international editions" noted in the 2012 *Griffin v. Jones* lawsuit. However, *Griffin v. Jones* nonetheless alleges that Jones cooperated with others "to purchase large quantities of cheap, international edition textbooks which could not be legally imported and sold in the United States"—the same general allegation at issue here. (Docket No. 214-2, *Griffin v. Jones* First Amended Complaint, ¶ 74.) In sum, both lawsuits allege that Jones and the Management Company caused SEB and CBR to buy international books from the Dominican Companies, which mislead the Publishers to acquire said books. Accordingly, *Griffin v. Jones* affords Griffin the opportunity to fully prosecute his fiduciary duty claim against Jones for the alleged purchase and sale of international books. He need not replicate them in this action.

Jones also relies upon the first-to-file rule. The first-to-file rule provides that "when two lawsuits involving nearly identical parties and issues have been filed in two different federal district courts, the district court in which the first suit is filed should, as a general rule, proceed to judgment." *Plantronics, Inc. v. Clarity, LLC*, 2002 WL 32059746 at *2 (E.D. Tenn. July 17, 2002). The doctrine originally served to encourage comity among co-equal district courts, preventing rulings by one that may trespass upon the authority of another. However, the doctrine has "evolved" and now also "promote[s] judicial economy and efficiency" by "avoid[ing] inconsistent or piecemeal resolution of legal issues that call for a uniform result." *Id.* (citations omitted). Therefore, although no comity concerns are raised as both actions have been raised in this Court, the principles of efficiency underlying the doctrine render it applicable here.

Courts in this circuit look to three elements to determine whether the first-to-file rule applies: "(1) the chronology of events; (2) the similarity of the parties involved; and (3) the similarity of the issues or claims at stake." *Id.* at *1. Balancing each of these equitable factors, the Court is persuaded that the first-to-file rule also weighs in favor of dismissing Griffin's breach of fiduciary duty claim. The two cases are "materially on all fours" with each other, sharing parties, factual circumstances, and legal claims such that "a determination in one leaves little or nothing to be determined in the other." *Smith v. S.E.C.*, 129 F.3d 356, 361 (6th Cir. 1997) (quoting *Congress Credit Corp. v. AJC Int'l, Inc.*, 42 F.3d 686, 689 (1st Cir. 1994)). As discussed *supra*, Griffin filed his complaint in *Griffin v. Jones* before initiating the third-party action in the instant complaint; identical parties appear in each; and the same factual circumstances give rise to breach of fiduciary duty claims in each. Accordingly, this case squarely falls within the scope of the first-to-file rule.

Therefore, in light of the foregoing analysis, the Court will dismiss Griffin's third-party claim for breach of fiduciary duty. Jones' motion to dismiss that claim in the instant action will be granted.

## II.     Indemnification

Griffin further argues that should he be found liable to the Publishers for common law fraud, he is entitled to indemnification from Jones. The Court must initially confront the parties' conflicting arguments regarding choice of law: although Jones contends that Kentucky law applies, Griffin insists that either Tennessee or New Jersey law governs the indemnification claim.

In the Complaint, only Plaintiffs Pearson Education, Inc. and Cengage Learning, Inc. offer factual allegations supporting the Publishers' fraud claim. According to Griffin, none of the actions detailed in the Complaint occurred in Kentucky. (*See* Docket No. 103, ¶ 56.) Instead, Griffin argues, the alleged misrepresentations were issued from the Dominican Republic to Pearson's principal place of business in New Jersey, where it suffered any resulting damages. Moreover, Griffin, a Tennessee resident, contends that he has been harmed in Tennessee by virtue of having to defend the fraud claim. As a result, Griffin argues that the connections to New Jersey and Tennessee require the Court to apply the law of one of these two states.[1]

Recognizing that Kentucky courts "are very egocentric or protective concerning choice of law questions," the Court must disagree with Griffin and will apply Kentucky law to this matter. *Paine v. La Quinta Motor Inns, Inc.*, 736 S.W.2d 355, 357 (Ky. Ct. App. 1987), *overruled on other grounds by Oliver v. Shultz*, 885 S.W.2d 699 (Ky. 1994). The Sixth Circuit has routinely recognized the strong preference

---

[1] Although Griffin admits that the principal place of business of Cengage Learning, Inc. is located in Connecticut, it does not argue that Connecticut law applies—likely because Connecticut has not adopted the Restatement (Second) of Torts § 914(2) (1979), upon which Griffin relies. Moreover, although both New Jersey and Tennessee have adopted Section 914(2), s*ee, e.g.*, *In re Estate of Lash*, 776 A.2d 765, 769 (N.J. 2001); *Pullman Standard, Inc. v. Abex Corp.*, 693 S.W.2d 336, 340 (Tenn. 1985), its unclear to the Court that this provision would entitle Griffin to indemnification. This rule provides:

> One who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover reasonable compensation for loss of time, attorney fees and other expenditures thereby suffered or incurred in the earlier action.

On its face, Section 914(2) concerns attorney fees and costs, not the indemnity that Griffin seeks. However, having determined that Kentucky law applies, the Court need not address the application of these foreign states' laws.

articulated in Kentucky's choice of law rules. *See, e.g.*, *Wallace Hardware Co., Inc. v. Abrams*, 223 F.3d 382, 391 (6th Cir. 2000) ("On at least two occasions, we likewise have noted this provincial tendency in Kentucky choice-of-law rules."); *Adam v. J.B. Hunt Transp., Inc.*, 130 F.3d 219, 230 (6th Cir. 1997) (noting that "Kentucky does take the position that when a Kentucky court has jurisdiction over the parties, [the court's] primary responsibility is to follow its own substantive law." (alteration in original) (quotation omitted); *Johnson v. S.O.S. Transp., Inc.*, 926 F.2d 516, 519 n.6 (6th Cir. 1991) ("Kentucky's conflict of law rules favor the application of its own law whenever it can be justified."); *Harris Corp. v. Comair, Inc.*, 712 F.2d 1069, 1071 (6th Cir. 1983) ("Kentucky courts have apparently applied Kentucky substantive law *whenever possible* . . . . [I]t is apparent that Kentucky applies its own law unless there are overwhelming interests to the contrary.") (emphasis in original).

Where a choice-of-law issue arises in a tort action, Kentucky courts apply the "any significant contacts" test. *See, e.g.*, *Adam*, 130 F.3d at 230. Under this test, "any significant contact with Kentucky [is] sufficient to allow Kentucky law to be applied." *Bonnlander v. Leader Nat'l Ins. Co.*, 949 S.W.2d 618, 620 (Ky. Ct. App. 1996); *see also Arnett v. Thompson*, 433 S.W.2d 109 (Ky. 1968); *Wessling v. Paris*, 417 S.W.2d 259 (Ky. 1967). Unlike claims sounding in contract, choice-of-law questions regarding tort claims "should not be determined on the basis of a weighing of interests, but simply on the basis of whether Kentucky has enough contacts to justify applying Kentucky law." *Arnett*, 433 S.W.2d at 113; *see also Adam*, 130 F.3d at 230.

Here, in light of Kentucky's significant contacts relative to this matter, Kentucky law governs Griffin's indemnification claim. The Court again notes the allegations at the core of the Publishers' fraud claim against Griffin: that he participated in forming Dominican companies to purchase international books, representing to the Publishers that they would be sold in the Dominican Republic, but instead selling them to SEB and CBR. (Docket No. 210, Griffin's Amended Third-Party Complaint, at ¶ 18.) Likewise, in Griffin's indemnification claim against Jones, Griffin points to Jones' "wrongful conduct" in establishing the Dominican Companies, defrauding the Publishers into selling international books to the

11

Companies, and causing the Companies to sell these books to SEB and CBR. (Docket No. 210, Griffin's Amended Third-Party Complaint, at ¶ 26.)

Bearing in mind these allegations, the Commonwealth's contacts to the purported artifice abound, beginning first with the players' identities: Jones is a Kentucky resident, and the Management Company's principal place of business is in Calloway County, Kentucky. Both SEB and CBR located their principal places of business in Kentucky, and SEB was formed as a Kentucky entity. At a minimum, then, at least part of the alleged fraudulent acts that involved improper sales of international books to Kentucky companies, which likely sold these editions from their principal places of business in Kentucky. Accordingly, the Court will apply Kentucky law to Griffin's claim for indemnification.

Indemnity "is simply the repayment to one party by another party who caused the loss, of such amounts the first party was compelled to pay." *Liberty Mut. Ins. Co. v. Louisville & Nashville R.R. Co.*, 455 S.W.2d 537, 541 (Ky. 1970). Unlike the statutory creations of apportionment and contribution, the right to indemnity is born of the common law and "is available to one exposed to liability because of the wrongful act of another with whom he/she is not *in pari delicto*." *Degener v. Hall Contracting Corp.*, 27 S.W.3d 775, 780 (Ky. 2000). "Under Kentucky law, cases permitting recovery based on indemnity principles 'are exceptions to the general rule, and are based on principles of equity.'" *Hengel v. Buffalo Wild Wings, Inc.*, 2013 WL 3973167 at *2 (E.D. Ky. July 31, 2013) (quoting *Hall v. MLS Nat. Med. Evaluations, Inc.*, 2007 WL 1385943, at *3 (E.D. Ky. May 8, 2007) (internal quotation marks and citations omitted)).

The "indemnity exception" applies in two classes of cases:

> (1) Where the party claiming indemnity has not been guilty of any fault, except technically, or constructively, as where an innocent master was held to respond for the tort of his servant acting within the scope of his employment; or (2) where both parties have been in fault, but not in the same fault, towards the party injured, and the fault of the party from whom indemnity is claimed was the primary and efficient cause of the injury.

*Degener*, 27 S.W.3d at 780 (quoting *Louisville Ry. Co. v. Louisville Taxicab & Transfer Co.*, 77 S.W.2d 36, 39 (Ky. 1934)).

In Kentucky, common law fraud constitutes an intentional tort. *See Farmers Bank & Trust Co. of Georgetown, Ky. v. Willmott Hardwoods, Inc.*, 171 S.W.3d 4, 11 ("Intent to deceive is a necessary element of actionable fraud."); *see also Hines v. Hiland*, 2011 WL 2580350, at *5 (W.D. Ky. June 28, 2011) (characterizing fraud as an intentional tort). Therefore, to recover on their fraud claim against Griffin—thereby raising the possibility of indemnity—the Publishers must establish that Griffin acted intentionally. However, under Kentucky law, intentional tortfeasors are not entitled to indemnity. *See, e.g.*, *Hall v. MLS Nat. Med. Evaluations, Inc.*, 2007 WL 1385943 at *3 (E.D. Ky. May 8, 2007) (precluding indemnity for claims grounded upon alleged intentional conduct as a matter of law); *Compton v. City of Harrodsburg, Ky.*, 2013 WL 5503195, at *2 (E.D. Ky. Oct. 2, 2013) (denying an indemnity claim for the intentional torts of outrage and failure to report child abuse). *See also Baker v. BP America Inc.*, 749 F. Supp. 840, 846 (N.D. Ohio 1990) ("[S]ince intent is an essential element of fraud . . . indemnification or contribution can never be claimed for that tort as a matter of law.") (citations omitted).

The Third-Party Defendants argue that Griffin is not entitled to indemnity if he is found liable for fraud. The Court agrees. Should the trier of fact conclude that Griffin is guilty of common law fraud, they will have determine that he acted *intentionally*: that is, neither as a "passive tortfeasor," nor "in fault, but not in the same fault." Moreover the fact-finder will have determined that Griffin acted in the same alleged intentional fault as the Jones: taking the Publishers' allegations as true, they have asserted that Griffin actively participated in the scheme, *in pari delicto* with any other tortfeasors. (*See* Docket No. 103 at ¶¶ 35-36, 38.)

The Court notes that although Griffin argues against the application of Kentucky law, he does not rebut Jones' analysis of the indemnity principles discussed above. Therefore, in accordance with the above discussion, Griffin's indemnity claim must be dismissed.

## Conclusion

For the foregoing reasons, the Court will GRANT Jones' Motion to Dismiss. (Docket No. 214.)

An appropriate Order will issue concurrently with this Memorandum Opinion.