THE MCGRAW-HILL COMPANIES, INC., et al.,            PLAINTIFFS

v.

CHARLES A. JONES, et al.,            DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon Motion by Defendant David Griffin ("Griffin") seeking an order from this Court directing Plaintiffs to disclose the actual amount which has been paid to counsel in this matter. [DN 311.] Plaintiffs have responded, [DN 314], and Griffin has replied. [DN 315.] This matter is ripe for adjudication and, for the following reasons, **IT IS HEREBY ORDERED** that Griffin's Motion [DN 311] is **DENIED.**

### I. Background

McGraw-Hill Global Education Holdings, LLC, along with several related entities, (collectively, "Plaintiffs") filed suit against Griffin in 2012, bringing claims for copyright infringement, falsification of copyright management information, and trademark counterfeiting. Essentially, it was alleged by Plaintiffs that Griffin and co-defendant Charles Jones ("Jones") were acquiring foreign-edition textbooks at a much lower cost than that of their domestic counterparts. After the acquisition of these textbooks, alterations were made to give them the appearance of domestic editions, and they were then sold at a considerable profit. In June 2016, an offer of judgment was presented by Griffin, pursuant to Federal Rule of Civil Procedure 68, which was accepted by Plaintiffs.[1]

---

[1] This summary is taken from this Court's previous Memorandum Opinion & Order, docketed at DN 296, as well as the Sixth Circuit Court of Appeals' decision, docketed at DN 300.

1

Since then, there has been considerable debate concerning whether the offer of judgment precluded an award of attorney fees to Plaintiffs. In the end, the Sixth Circuit, on appeal from Plaintiffs, determined that attorney fees could be included in counsel's costs. [*See* DN 300.] The present Motion filed by Griffin argues that he is entitled to present to the Court the amount of money actually paid by Plaintiffs to their counsel in litigating this matter, as opposed to the detailed billing statement already proffered by Plaintiffs. [*See* DN 292-11.] The merits of the Motion are discussed below.

## II. Discussion

### A.

"A district court's award or denial of attorney's fees is reviewed for abuse of discretion." *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 348-49 (6th Cir. 2000) (internal citations omitted). The lodestar method of fee calculation is the correct manner by which this Court determines attorney fees in cases such as the one currently before the Court. This calculation is accomplished "by multiplying the proven number of hours worked by a court-ascertained reasonable hourly rate." *Ellison v. Balinski*, 625 F.3d 953, 960 (6th Cir. 2010) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). Crucially, "'[t]he primary concern in an attorney fee case is that the fee awarded be reasonable,' that is, one that is adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers." *Adcock-Ladd*, 227 F.3d at 349 (quoting *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999)).

To that end, the lodestar is the initial figure to which the Court looks in beginning its assessment of the "reasonableness" of the fee. *See id.* Once that calculation is completed, "[t]he trial judge may then, within limits, adjust the 'lodestar' to reflect relevant considerations peculiar to the subject litigation." *Id.* (citing *Reed*, 179 F.3d at 471-72). There is "a 'strong presumption'

favor[ing] the prevailing lawyer's entitlement to his lodestar fee." *Id.* at 350 (quoting *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992), among other cases). This means that "modifications to the lodestar are proper only in certain rare and exceptional cases, supported by both specific evidence on the record and detailed findings by the lower courts." *Id.* (internal citations omitted). In assessing the reasonableness of the hourly fee, the Court "should initially assess the 'prevailing market rate in the relevant community,'" that is, "that rate which lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record…at least where the lawyer's reasonable home rate exceeds the reasonable local charge." *Id.* (internal citations omitted).

As Griffin points out in his instant Motion, in assessing the amount which is to be paid to the prevailing party, the Court "may consider, either in determining the basic lodestar fee and/or adjustments thereto,…the twelve [factors] listed in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)." *Id.* Those twelve factors which the Court *may* consider are as follows:

> (1) The time and labor required by a given case; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Reed*, 179 F.3d at 471-72 n.3; *see also Adcock-Ladd*, 227 F.3d at 349 n.8. In the Sixth Circuit, noticeably absent from the lodestar calculation or the twelve permissible *Johnson* factors, is the demand that the prevailing party disclose the amount paid to date in pursuit of the matter; that is, the amount of money actually doled out from litigant to counsel throughout the life of the case.

3

**B.**

In Griffin's Motion, he argues that when the Court undertakes to determine the amount of fees to be paid to Plaintiffs in this case, one factor the Court *should* take into consideration is the amount of money actually paid by Plaintiffs to their counsel throughout the course of this litigation, rather than the totals already provided. In support of this argument, Griffin cites to a number of cases, one of which is the Second Circuit Court of Appeals' decision in *Crescent Publ'g Grp., Inc. v. Playboy Enters., Inc.*, 246 F.3d 142 (2d Cir. 2001). There, the Second Circuit noted that "[t]he actual billing arrangement certainly provides a strong indication of what private parties believe is the 'reasonable' fee to be awarded." *Id.* at 151. More specifically, the Second Circuit held that "the actual billing arrangement is a significant, though not necessarily controlling, factor in determining what fee is 'reasonable.'" *Id.*

However, this Court makes note of a few things at this juncture. First, of course, this Court looks to the Sixth Circuit Court of Appeals and the Supreme Court of the United States for its mandatory authority regarding exactly how to rule on matters of law before it; not the Second Circuit, although to be sure its ruling may be deemed persuasive. Second, in reaching the above-quoted holding at the conclusion of the *Crescent Publ'g Grp.* case, the Second Circuit inserted a footnote to the Eighth Circuit Court of Appeals' opinion in *Pinkham v. Camex, Inc.*, 84 F.3d 292 (8th Cir. 1996), a case which differs in opinion, thereby creating a circuit split. In *Pinkham*, the Eighth Circuit held, in construing the issue of attorney's fees in the context of a copyright infringement case, that "the actual fee arrangement between the client and the attorney is immaterial." *Id.* at 294. It went on to provide that "the monthly statements counsel provided Pinkham and her partial payments on that account sufficiently indicate Pinkham was obligated to pay her attorneys." *Id.* Third, the Court is aware of no cases which have come before the Sixth

Circuit or the Supreme Court in which it has been held that a party should be compelled, under these circumstances, to produce the sort of figures which Griffin seeks.

Certainly, the Sixth Circuit has made clear that, "[t]o justify any award of attorneys' fees, the party seeking compensation bears the burden of documenting its work." *Gonter v. Hunt Value Co., Inc.*, 510 F.3d 610, 617 (6th Cir. 2007) (citing *Reed*, 179 F.3d at 472). For example, in *Gonter*, "the Plaintiff submitted considerable evidence—based on its 2005 billing rates—supporting its claim for a lodestar amount of $2,221,509." *Id.* Because "the bulk of the legal work occurred from 2001-2003," the district court made its lodestar calculations based not upon the firm's 2005 billing rates but, rather, by its 2004 billing rates, thereby reducing the dollar amount somewhat, while also producing an equitable result for the attorneys, who had to wait a considerable amount of time to get paid. *Id.* Taking the 2004 rates, the Court multiplied them by the 8,600 hours documented and supported by the attorneys' fee petition. *Id.* This, in the words of the Sixth Circuit, "did not exceed [the district court's] discretion; in fact, the district court appropriately balanced the twin goals of ensuring adequate compensation for counsel who take on FCA cases and preventing a windfall for lawyers." *Id.* The Sixth Circuit conducted no inquiry into the precise amount of money actually changing hands between client and law firm, as Griffin seeks here.

Similarly, in *Imwalle v. Reliance Medical Prods., Inc.*, 515 F.3d 531, 553-54 (6th Cir. 2008), the Sixth Circuit did not inquire after, nor require, an investigation into the exact amount of money changing hands throughout the life of the case. Instead, the Sixth Circuit made specific note of the fact that "Imwalle's counsel submitted 52 pages of detailed, itemized billing records that specify, for each entry, the date that the time was billed, the individual who billed the time, the fractional hours billed (in tenths of an hour), and the specific task completed." *Id.* at 553.

5

Additionally, "[t]he billing statements document time billed beginning on March 30, 2004 and ending on May 21, 2006. This period of time corresponds to the dates on which the litigation commenced and Imwalle filed a request for attorney fees." *Id.* at 554.

This bears a striking resemblance to the case at bar. Here, in their initial Motion for Attorney Fees/Motion for an Award of Costs, Plaintiffs provided an attached exhibit spanning thirty-one pages, compiling the same kind of information. [*See* DN 292-11.] For example, the first entry is dated February 18, 2013, the attorney listed as having worked on the issue is identified as "Oppenheim," the description of the work completed is "Review and edit Griffin Complaint," one hour is listed as billed at a rate of $425 per hour, for a total fee of $425. [*See id.* at 1.] Taking another entry at random, on November 4, 2014, an attorney identified as "Chen" completed the task described as "Review and revise Griffin comments to Protective Order and corresp w/opposing counsel re same [sic]". [*Id.* at 7.] There are hundreds of these entries, which have been provided by Plaintiffs, spanning from February 2013 to July 2016. [*See id.*] This document mirrors exactly the type of accounting document which would be sent to the client as a bill. The only editing made by Plaintiffs' counsel with respect to this accounting document is that certain entries were actually taken out in order to reduce the overall fee by around $175,000. According to Plaintiffs' counsel, there was some overlap with other cases in which the firm is representing these Plaintiffs, as well as some clerical and ministerial matters which were originally included in the bill, but which were ultimately stricken.

As a final example, in *Sykes v. Anderson*, 419 F. App'x 615, 617-18 (6th Cir. 2011), the Sixth Circuit explained that "the appropriate rate [for a prevailing lawyer] is not necessarily the exact value sought by a particular firm, but is rather the market rate in the venue sufficient to encourage competent representation." (internal citations omitted). There, the Sixth Circuit

approved of an attorney fee award calculated at $250 per hour, where the lawyer claimed to charge $350 per hour for his services and the opposing party sought an hourly calculation from $170. *Id.* In this Court's view, the Sixth Circuit's repeated embrace of the lodestar method, complete with its base numerical values derived from the actual number of hours worked and a *reasonable* fee, forecloses Griffin's argument that somehow the actual amount of money transferring hands should somehow come into play here.

Griffin also cites to *Liguori v. Hansen*, No. 2:11-cv-00492, 2017 WL 627219 (D. Nev. Feb. 15, 2017). There, the District Court for the District of Nevada noted that, in examining the award of fees to counsel, a court should consider, among other factors, "the amount of fees actually charged to the client." *Id.* at *8. Notably, the *Liguori* Court was citing to *Lieb v. Topstone Industries, Inc.*, 788 F.2d 151 (3d Cir. 1986) in discussing those factors. However, this Court is not bound by those decisions, and is not inclined to adopt that factor at this time. Moreover, as this Court's sister court in the Eastern District of Michigan noted in *Career Agents Network, Inc. v. Careeragentsnetwork.biz*, 722 F. Supp.2d 814, 824 n.6 (E.D. Mich. 2010), "[i]n making a lodestar calculation for work performed by…counsel, it is not significant that counsel performed its work *pro bono*." Indeed, "[f]ees may still be awarded at a reasonable rate for work done by public interest firms." *Id.* (citing *Blanchard v. Bergeron*, 489 U.S. 87, 95 (1989)). Certainly, Plaintiffs' counsel in this case is not a public interest firm, nor is there any contention that it performed the work for Plaintiffs *pro bono*. However, the implication of the above-quoted statements provides further support for the notion that the key inquiry is the reasonable rate the attorney is entitled to, and not the actual amount of money changing hands.

To be sure, in making its calculations under the lodestar method, this Court must be apprised of the number of hours expended by Plaintiffs' counsel in pursuit of this matter,

7

complete in a detailed, billing-statement format. It is not entirely clear whether the aforementioned exhibit, detailing all of the work done on the case by Plaintiffs' counsel between February 2013 and July 2016 is all-encompassing, or whether it is the official billing document. [*See* DN 292-11.] In his Declaration attached thereto, one of Plaintiffs' attorneys, Matthew Oppenheim, states that this thirty-one page document constitutes "contemporaneous billing records prepared in the normal course of my firm's business." [DN 292-9, at 4.] However, Plaintiffs will need to provide clear and comprehensive documentation of this, at any rate, as well as any additional billing records relating to this case to supplement the Court's inquiry (*i.e.*, billed time which falls outside the aforementioned timeframe). Using this, as well as what the Court deems to be a reasonable fee in light of the relevant circumstances, and some or all of the twelve *Johnson* factors laid out above, the Court will make its ultimate determination on fees.

### III. Conclusion

For the reasons stated herein, **IT IS HEREBY ORDERED** that Griffin's Motion requesting an order requiring Plaintiffs to disclose the actual amount paid to counsel in this matter [DN 311] is **DENIED.**

**IT IS SO ORDERED.**

cc:     Counsel of Record